# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

_____ Division


FILED
FEB 1 - 2023
Clerk, U.S. District Court
Greensboro, NC
BY ___

| | |
|---|---|
| William Eric Baker | Case No. 1:23CV91 |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Jury Trial: *(check one)* ✔Yes ☐No |
| -v- | |
| Michael S. Regan, Administrator, Environmental Protection Agency | |
| *Defendant(s)* | |
| (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I. **The Parties to This Complaint**

  A. **The Plaintiff(s)**

  Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

  | | |
  |---|---|
  | Name | William Eric Baker |
  | Street Address | 21 Argonaut Drive |
  | City and County | Durham, Durham County |
  | State and Zip Code | North Carolina 27705 |
  | Telephone Number | (919) 454-5746 |
  | E-mail Address | baker.william.e@gmail.com |

  B. **The Defendant(s)**

  Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

**Defendant No. 1**

| | |
|---|---|
| Name | Michael S. Regan, Administrator, Environmental Protection Agency |
| Job or Title *(if known)* | Administrator, Environmental Protection Agency |
| Street Address | 1200 Pennsylvania Ave NW Room: E |
| City and County | Washington, DC |
| State and Zip Code | Washington, DC 20460 |
| Telephone Number | (202) 564-4700 |
| E-mail Address *(if known)* | Regan.Michael@epa.gov |

**Defendant No. 2**

| | |
|---|---|
| Name | Peter Tsiragotis |
| Job or Title *(if known)* | Director OAQPS |
| Street Address | 109 T.W. Alexander Drive |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

**Defendant No. 3**

| | |
|---|---|
| Name | Anna Wood, Fred Thompson, Jenny Noonan, Eric Roberts, Jeff Wh |
| Job or Title *(if known)* | Various |
| Street Address | 109 T.W. Alexander Drive |
| City and County | Durham, Durham |
| State and Zip Code | NC 27709 |
| Telephone Number | |
| E-mail Address *(if known)* | |

**Defendant No. 4**

| | |
|---|---|
| Name | Adam Baumgart-Getz |
| Job or Title *(if known)* | Supervisory Environmental Protection Specialist |
| Street Address | 109 T.W. Alexander Drive |
| City and County | Durham, Durham |
| State and Zip Code | NC 27709 |
| Telephone Number | |
| E-mail Address *(if known)* | |

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | EPA office of Air Quality and Planning Standards (OAQPS) Office c |
| Street Address | 109 T.W. Alexander Drive |
| City and County | Durham, Durham |
| State and Zip Code | NC 27709 |
| Telephone Number | |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:
43 CFR § 20.510; 18 U.S. Code § 1001; 29 C.F.R. Part 778; 33 U.S. Code § 931; negligent anc

☑ Relevant state law *(specify, if known)*:
N.C.P.I.–Civil 800.10; The North Carolina Workers' Compensation Act. (1929, c. 120, s. 1; 1979

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [✔] Failure to hire me.
- [ ] Termination of my employment.
- [✔] Failure to promote me.
- [✔] Failure to accommodate my disability.
- [✔] Unequal terms and conditions of my employment.
- [✔] Retaliation.
- [ ] Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
Began before my hiring and continued through my departure from the agency

C. I believe that defendant(s) *(check one)*:
- [✔] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [ ] race _____
- [ ] color _____
- [✔] gender/sex _____
- [ ] religion _____
- [ ] national origin _____
- [ ] age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- [✔] disability or perceived disability *(specify disability)*
  ADHD/ADD, PTSD, Depression

E. The facts of my case are as follows. Attach additional pages if needed.

Please See Attached

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

January 2020

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* 10/31/2023 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Equal pay for equal work Gross Total Salary Difference = $312,776; Travel costs associated with the inability to telework because of the discriminatory hire. $28,610.40; Interest on investments to TSP: $40,204; Out of pocket costs to travel/livel to take a position in Connecticut/Ft. Eustis: $41,400; Stress induced Myocardium $400). Leave Restoration: 234 hours Annual Leave;156 hours Sick Leave; OT: 144 hours $15,578; Equal bonuses: $6,500. Day care expenses: $13,440; M&IE CT: $5,520 Lodging: $8,560; M&IE VB: $16,704 Lodging: $36,720
Sub-Total: $526,412
Max Non-Pecuniary damages. $350,000
TOTAL: $876,412

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 01/30/2023

Signature of Plaintiff: WILLIAM BAKER  Digitally signed by WILLIAM BAKER Date: 2023.01.30 20:49:43 -05'00'

Printed Name of Plaintiff: William Eric Baker

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

Summary:

On 11/15/2016, Adam Baumgart-Getz (ABG) contacted me via telephone inquiring if I was interested in an administrative position with the EPA. I had applied to several positions within the EPA and with the office who had announced a GS-11 Administrative Position. He received my resume from Jeff Whitlow, who was the director for operations for the Office of Air Quality and Planning Standards (OAQPS). We spoke via telephone. He described the position as a "Hybrid position", administrative specialist and training specialist. I had never heard of such a position within the federal government, but what he described was similar to announcements he would later use as advertisements for new members to the group. His interview questions focused on my experience with contracts, budget, e-learning, training, learning management systems, and distance education.

At the end of the conversation, he asked me to go to USAJOBS and apply for the position they had advertised, which was an Administrative Specialist, GS-9, position. I asked at the time why it was an administrative position and not another series, to which he responded that he was simply trying to get two FTE into the agency before they froze jobs. I cannot remember if they had to reopen the position announcement or not. I later found out that EPA's HR office will often use each other's announcements to fill positions, even if it isn't exactly the position they need. I did apply to the position and later that day received a call from the individual whom I was replacing.

Later that afternoon, Tonya Blatcher contacted me to set up an in-person interview. On 11/17/2016, I came to campus for an in-person interview with Erica Roberts (ER), Adam Baumgart-Getz (ABG), and Maryann Warner (MAW). During the interview I was asked about my experience with budgets, contracts, training, e-learning, and learning management systems (pg 28 CE Affidavit). I was told there would likely be promotion potential. After the in person interview, I was introduced to Jeff Whitlow (JW). I was interviewed a second time for an administrative position with JW's CORE operations office. During this interview JW asked if I was interested in a "Training Position" or an administrative position. Which I had indicated, that I was interested in a training and development position. ABG offered the position and stated that there would be promotion potential. I received the offer letter, which indicated only a GS-9, administrative specialist. I contacted the HR personnel responsible and asked about the promotion potential. I was told they only hired this position as a GS-9 and I would have to take it up with ABG. I did take up the issue with ABG when I arrived at the agency for orientation. He agreed to check in on it. I went on to orientation, where I was handed a folder which contained a document that stated promotion potential to the GS-13 grade. I signed the documents and asked the HR specialists for copies of the documents. I was

told they could not provide copies, but that the documents would be uploaded into my EOPF. The document annotating the GS-13 promotion potential never made it to my EOPF. (Email sent to ABG and Latoya Williams [LW]) At this time ABG stated they did not know if there was promotion potential or not, he continued to say he was "checking" for over a month.

During my first few days 1/7/2017, ABG informed me of a second hire, he was pushing through when I arrived for orientation. Adam was attempting to get him into the agency before the previous administration froze hiring, in 2017. He stated that this individual was to perform the administrative duties, while I was to work on training. The second hire did not make it through the hiring process which left me to fill both roles in the group. I later found out from Tonya Blatcher, that ABG attempted to get Mrs. Blatcher to perform the duties of both a training specialist and an administrative specialist in the short time (6 months) Mrs. Blatcher worked for ABG. Mrs. Blatcher declined performing the training duties and applied to the front office administrative position, and it became a point of contention between the two. ABG and ER chose to hire me under the wrong series and grade. I learned later that ABG had been instructed to file paperwork to change the series and grade by ER, which he never completed.

As I learned about the job and expectations of me in the first few days, I sent an email to Debbie Stackhouse (DS) as a follow up to what was expected of me for the training program.(See email) I inquired with ABG about my duties with his group and he stated that I would be David Cole's (DC) replacement (See email). DC was a GS-13 General scientist who was managing the contracts and budgets for the group. I was asked to attend grants, contract, and project management training in order to replace DC. Close to when DC was to retire, the OID/CORE offices informed Martin Husk (MH) or Chebryll Edwards (CE) and ABG that administrative specialists were not to manage contracts in any way, shape, or form. ABG did not inform me of this communication for a period of time after that. He continued to ask me to complete the training for COR certification. It was communicated with him several times that I would not be able to take over the duties for Mr. Cole and he would need to find someone else. This did not stop ABG or his staff from asking me to manage contracts for the group. Up until early 2020 both he and his staff were still asking me to perform work on the contracts for IPOG.

I did contact the union official for our office in May of 2018. There were several conversations between Holly Wilson (HW) (AFGE Rep) and JW. HW suggested that I apply to other positions within the agency, including a detail offered by IPOG, the group that I was working with at the time. HW, continued to have conversations with JW, I was not privy to these conversations, but HW continued to push the senior office management (Peter Tsirigotis) PT and Mike Kerber to fix the issue created by ABG, ER, Greg Greene (GG), and a host of others. I continued to push for changes to my grade

and series, based upon the work I was performing. I asked ABG to correct the PD, which would have allowed me to request a desk audit. ABG worked with JW, LW, JN, and a number of others' to "Fix" my position description. I provided all of the projects, communications, and other information associated with the duties being requested of me. JN and ABG then falsified the duties, responsibilities, and projects I was performing on federal documents, and submitted them to human resources, among other EPA offices. He also falsified documents concerning bonuses and other personnel matters at various times throughout my time at EPA.

ABG continued to manipulate me by suggesting that I was not performing the duties as assigned. This manipulation tactic was used the entire time I worked for the agency. When pushed for specifics ABG could not provide definitive answers or examples. He also allowed Maryanne Warner to weigh in on my annual performance or claimed that she had. MAW denies this fully, and I have a recorded conversation with her denying she weighed in. ABG did acknowledge some of the work I was performing in justifications for awards. I engaged Martin Husk (MH), Fred Thompson (FT), Jenny Noonan (JN), Chebryll Edwards (CE), Anna Woods (AW) and all of the other acting directors of OID requesting equal pay for equal work. As you can see in CE's affidavit (starting on page 9-114), they knew they were asking me to perform duties not associated with my grade or series. As each of these acting directors came into the office, I was required to brief them about the functioning of the learning management system, which should have been a giant red flag to them. They had no problem assigning me projects outside of the administrative series which is dominated by disabled Veterans, as they do not hire many staff above the GS-12, but hire other's into positions that have promotion potential to the GS-13. Fred Thompson did attempt to have me only perform administrative duties, however, ABG and DS, refused to do so. I asked to stop performing the duties that were outside the scope of my series/grade, management refused. I asked to be compensated, but management refused. I informed them I wished to be compensated based upon the Lilly Ledbetter act.

I did apply to the detail within IPOG, but was denied. I continued to apply to positions within OAQPS. One position I was passed over for in the application process, because instead of stating I had experience working with air quality subject matter experts (SME) I only identified them as SMEs. This brings me to the number of positions I applied to within OAQPS and EPA; starting on 8/16/2018 possibly earlier, I applied to at least 25 positions within EPA, 8 within OAR the overarching office for OAQPS. I had 2-3 interviews, but the overwhelming view of disabled Veterans is that we are a hindrance to hiring "Qualified" personnel. I applied for a position in the CORE office, to work with Tiffany Purifoy (TP) and FOIA, which I was offered in July of 2019.

Prior to leaving for a detail in the CORE office, ABG stated that I would be required to train two new FTEs that were going to be running the LMS. He stated that unless I agree to train them, I would not be allowed to take the detail. The FTEs I was asked to train were a GS-13 Environmental Protection Specialist and a GS-13, Management Analyst. The first he informed me I would be required to provide training on how to develop e-learning courses, curricula, and learning objectives and outcomes. The second person I was asked to train on the LMS and associated functions, learning design, and other aspects of training and education.

I went on detail to JW's office, ABG continued to ask me to help his staff throughout the detail and after with all of the aforementioned issues. Just as the detail was about to end, there was discussion about extending the detail, and discussion about making it permanent. Management decided not to make it permanent. Also of note here ABG placed comments in my annual review about my assisting other Veterans with their VA benefits. I was not however using company time to assist other Veterans, I was using my personal time. I can provide witnesses who will corroborate EPA cultural views on Veterans.

At the last moment management decided that I would go to the OID front office. Which everyone viewed as a punishment, as though I had done something wrong. I had to address questions the entire time I occupied the second desk in the front office. As no information was being shared with me I had no explanation for staff members asking. I was then informed that I would be moving back to IPOG, and ABG eventually provided me with a list of duties, which included working as the only GS-9 Admin Spec. in the facilitation group. After returning to the team in 2020, I was excluded from all team and staff meetings, work discussions, and completely isolated from the group. ABG stated they had no work for me to perform when EPA went to telework and he then attempted to require me to audit courses for 508 compliance, which is not administrative specialist type work, it is instructional design work compensated at the GS-13 grade. Around September 2020, I was selected for a GS-11 instructional design/instructional systems specialist position with the department of Navy. I reported to my new position on 7 Jan 2021.

No fewer than three times did ABG make comments about disabled Veterans getting in the way of hiring, "Qualified candidates." 10/16/2018, 11/13/2018, 1/28/2019, other managers made similar statements; MH, ABG, and others have made similar statements, it is a commonly held belief within EPA. ABG also informed me that like Gary Blaise I was not a "High" performer, which is just another one of his attempts at manipulation. Gary was an Air Force Veteran.

In Oct of 2018, I asked for a reasonable accommodation from ABG verbally and followed up in writing. Instead of referring me to the RAC coordinator, ABG immediately requested medical documentation, as was the correct process. The agency claimed they filled the reasonable accommodation, however I never saw it, due to telework during COVID. ABG claimed to have no knowledge of any disability; however, he had to sign off on Wounded Warrior Leave which the agency required the specific disability in order to take the leave. I also had several conversations with him around death anniversary dates and Sept. 11th. His claim to not know is countered by the fact that Joan Tucker-Carver was witness to these conversations and the fact he signed off of the WWL.

During 2017-2019, I discovered that LW had displayed on a sharepoint site and made available to the whole organization, the disability status of all office disabled Veteran employees, including disability status by point preference, grade, step, name, job title, series, etc. I informed her supervisor and her, requesting they remove it from the SP site. It was done, but my disability information was compromised and I have no idea how many people accessed that document.

I analyzed the list of OAQPS employees, and a pattern emerged. The office had hired 24+/- Veterans, of those 24 Veterans 80% were GS-12's or below the majority in the administrative series. The percentage of non-disabled Veterans below the GS-12 was roughly 3%. Meaning that 97% of Non-disabled, Non-Veterans were GS-13's or above. The agency routinely hired Peace Corps returnees non-competitively, but at that point had not used the schedule A hiring initiative at all, according to JW. It was unclear if he was suggesting they didn't need to because they received enough applicants or if they refused to because they did not like to hire Veterans.

In 2018 or 2019, ABG forwarded an email that was sexually explicit to the entire IPOG team, about a former colleague, and included comments in the email chain from current employees and SEE contractors, including ABG, a division director, and several other high level staff members. When the email was discovered, I brought it to ABG's attention, and asked him to report it to HR. His immediate response was that he was not going to report it to HR, but if they brought it up, he would use the excuse that his wife was dying of cancer and that is why he sent it out so quickly. Part of the subject had to do with Gary Blaise's wife passing. The email was sent in 2018 or 2019 and was reported to the union for action. I do not believe any investigation ever took place.

Discrimination
- I asked for accommodations to help manage the "Work flow" that I was "failing" to meet the standard. He failed to provide any accommodations and in-fact, gave the office I requested to a non competitive hire GS-7.
- During, no fewer than three IPOG group meetings, he made comments about only receiving Veterans for hiring referrals (Helicopter Pilots) and how they didn't have the required skills he, "Needed." Knowing fully, that I am a Veteran, and the statement was meant as an affront to me and my fellow Veterans.
- He singled me out on a reporting requirement, which had nothing to do with my actual position, not requiring it of anyone else.
- Monitored my "comings and goings" but no one else's. Attempted to write me up for, "Abuse of the leave policy." He is fully aware of my disabilities and has seen my disability letter.
- Made jokes about being ADD, knowing that I actually have a diagnosis.

Equal Pay Act and Title VII, ADEA & ADA
- The work I was performing was also being performed by GS-13's, there was communication from my supervisor to one of the GS-13's whom I would be replacing informing the employee that I would be taking over his duties.
- I was informed by my supervisor that I would only be allowed to go on a detail if I finished training the GS-13 on the Learning Management System.
- I was performing more work and the work of the GS-13 assigned to the training program.
- There was a falsification of the scope, grade, level of communications and to whom I was communicating, and a refusal to correct the Position Description which blocked me from pursuing a desk audit.
- I was never allowed to telework, except for periodic flex-i-place, while everyone else was allowed to do so.

Ongoing Harassment
- Intimidation and obstruction in the evaluation process, "See comments sent to Jeff Whitlow and all three EOY PARS"
- Minimized what I was doing even though he knew, or should have known, then enter information into my PARS as if I was not making the "Grade"
- Attempted to write me up for using leave for my disabilities, illness etc. (Attempted, because I had approved leave for each instance and had communicated to those in charge.)
- Failed to provide a timely PARS agreement, this includes his failure to adequately provide an accurate description of the duties he expected me to complete.
- Counseled me for a sponsored trip LB took to Europe, I completed the travel in less than a week, it technically should have taken 3-5 weeks. LB dropped it on me the Thursday before he was supposed to fly.

- He would say, "You are not completing assignments, but would never articulate which assignments, I was not completing. He would use football analogies, but never specifically state what tasks I needed to improve upon.
- Refusal to provide accommodations

Retaliation
- o Attempted to damage my reputation with his comments on three years' worth of PARS
- o Misrepresented and minimized job duties to HR representatives
- o False rumors about performance to ruin my workplace reputation, e.g. he would state that I have a reputation for helping but not finishing tasks, he would also speak to other group members about my performance (I can hear through the wall).
- o Unreasonably large tasks, time consuming tasks that did not add value to my work, (e.g. 5 day, and workload reporting, also an example of being singled out)
- Sexual harassment discussion (he sent an email that would be considered sexual harassment, I advised him to report it, which he refused and said he would use the "Dying Spouse" defense). He assumed I reported his email.
- He scheduled the interview for Training Coordinator during a busy day, when I would be at a disadvantage, he had full access to the outlook calendar and knew that I had back to back meetings that day. (I do have the screenshot of my calendars)
- Provided all my colleagues with bonuses of more than $1,000, even our part-time colleague—I received $500, even though I was doing equivalent work.
- When I began pushing back about the job duties, he began to try to document more instances of me "not completing my work."

Misrepresentation
- Fraudulent, negligent and innocent misrepresentation in the employment context hiring a GS-9 admin specialist performing an Instructional Systems Specialist, GS-13's work (In this case my colleagues were GS-13's, Program Analyst and Environmental Protection Specialists)
- There were several narratives about my job: 1. I was hired to work with the training program and there was another person who was hired to perform the admin function, but he didn't get through and I would be doing both. 2. Erica said to hire me as an admin and Adam was to work on a change in series/grade. 3. I was hired only as an admin, despite their asking me during the interview, about my experience with E-learning and training.

- 

Abuse of Power
- Falsification of federal documents: back dated PARS, falsified testimony to the EEOC investigator, falsified the job advertisement to hire me, falsified work duties and Position description.

- Threatening to write me up if I did not perform the SEE payroll function and when I inquired about who is responsible for this task, he ordered me to only go through him, if I had questions about any work-related function. This function was never articulated in the interview, the announcement, or any other communication, until after I came into the agency. As the PO, he was the responsible party for ensuring the certification and validation of SEE payroll.
- Telling me to water his plants
- Telling me to make a label for his personal locker
- Asking me to pick up coffee for the Joint training committee with my own money.
- Refusal to correct the Position description to reflect the duties for my position, blocking me from performing a desk audit to correct my position description and grade.

## Hostile Work Environment

- Reporting requirements (no one else was required to do so)
- PARS-falsified duties, projects, and programs I was responsible for while also providing awards based upon higher level projects/program work.
- Counseled me for "Violating the leave policy" but all the "instances" were approved leave requests.
- Isolated: I was not invited to any team meetings for nearly 1 year, with my supervisor's and LER's full knowledge.
- Singled out concerning reporting of tasks/projects/programs, required only me to provide daily reports.
- Required me (as an experienced staff member) to attend mentoring, but did not require the Peace Corps returnee who had little to no experience.